with an injunction motion, Geller versus de Blasio. So let me make sure council is here. Mr. Yaroshalmi. Present, your honor. Good morning. Am I pronouncing your name right? Perfectly, yes. Okay, good. Okay. And Ms. Garman? Yes, your honor. Good morning. Okay. So you each have five minutes. So we're going to start with Mr. Yaroshalmi. You'll get a notification at the four minute mark. Okay. So Mr. Yaroshalmi, you may proceed. Thank you, your honor. And while the deputy clerk informed me that there's not normally a rebuttal permitted in motions, she did suggest I ask, if it's possible, I would like one minute of my five minutes for rebuttal. Well, let's see how it goes. How about that? Okay. Thank you, your honor. I have three principal points to make this morning. The first is that content-based restrictions are presumptively invalid and subject to strict scrutiny. In this case, the defendant's appellees have conceded in their opposition papers that to make a distinction between our client's protest of 25 to 100 individuals and a public forum observing social distancing protocols would be illegal. And the only way to determine that they were not permissible individual protest of the same number of people would be to examine the content of the message. As this court made very clear in Taba versus Chertoff, T-A-B-B-A-A versus Chertoff, C-H-E-R-T-O-F-F, 509 F3rd 89 at 102, 2007. The court provided a very clear articulation of the test for strict scrutiny that imposes upon the First Amendment. I'm sorry to interrupt. I just want to double-check that Judge Sullivan is on the line. I don't see it here. Judge Sullivan, can you hear me? Yeah, my apologies. Let's just wait one second, and I'm sure the judge will call us back. It probably got disconnected. Hello. Thank you, Judge. I noticed that you got disconnected. So I asked everybody to just wait a few minutes. Okay, thanks. I don't know what happened. Okay. Thank you, Judge. Hey, I'm sorry. I got cut out just as Mr. Yerushalmi was about to get into his main point. So maybe we can restart. Sorry about that. I'm the only one of the courthouse actually, but I got cut off. Can you hear me? Your Honor? Yes, I do. And I will just begin at the beginning as it were. Yeah. I'm sorry, Ms. Rodriguez. Can we give Mr. Yerushalmi five minutes, and we'll just start over? Sure, Judge. Thanks. Sorry about that. Thank you very much, Your Honor. The three points that I wish to make begin with content-based restrictions. Content-based restrictions are presumptively invalid, subject to strict scrutiny.  To establish, one, a compelling state interest. Two, that that restriction is necessary to protect the interest and narrowly tailored to achieve that end. This court in Taba B. Chertoff, T-A-B-B-A-A, versus Chertoff, C-H-E-R-T-O-F-F, 509 F. A very clear articulation of the test, and I'm quoting now, serves compelling state interest, unrelated to the suppression of ideas that cannot be achieved through means significantly less restrictive of associational freedoms. And as we point out in our briefing, the exact same conduct, individuals protesting independently of one another, is legal under the executive order. But a group protest, as my client wishes to engage in, of 25 to 100 people, and indeed anything over 10 people, is not legal. And the only distinguishing feature between the two groups is the coordinated content of the messaging. Mr. Yaroshelmy, I understand that argument. That's certainly in your brief. I guess I'm asking, is that still your argument, or have more recent events changed your argument with respect to content neutrality, or you're not going there? In other words, is there any argument that the message is relevant? In other words, that certain groups protesting certain things are able to gather, but other groups protesting different things are having the executive order enforced. In fact, that is the second point that I wanted to make this morning, and that is precisely the fact. All one has to do is look out the window. All one has to do is read the formal press release issued yesterday, in which Mayor de Blasio and Governor Cuomo didn't simply say we're going to tolerate or permit the message of the demonstrators. I quote Mayor de Blasio, I support and protect peaceful protest in this city. The demonstrations we've seen have been generally peaceful. We can't let violence undermine the message of this moment. It is too important and the message must be heard. Governor Cuomo, I stand behind the protesters and their message, but unfortunately, there are people who are looking to take advantage of and discredit this moment for their own personal gain. That statement was made in the context of letting all of the demonstrators know that there was now going to be a late-night curfew. But if your message is consonant with the demonstrations that we see looking out the window, then not only may you protest in numbers vastly larger than what my apparently social distancing is not even required. In our case, our client made clear that her protest between 25 and 100 people would abide by social distancing. Yet, according to defendants' affilies, her protest today or tomorrow would be illegal, but the current protest would not. And that's clearly not just content-based, but even a viewpoint, the most egregious form of content-based discrimination. But both of those require strict scrutiny. You have one more minute. Now, this last point that you've made is not something that Judge Cote was asked to consider, correct? The viewpoint, neutrality point. That is correct. And it's not important to this case now because the viewpoint and content-based restriction, when examined under strict scrutiny, which takes place in a traditional public forum, is exactly the same. The distinction only occurs between content and viewpoint discrimination in non-public forum. This is a public forum case. The analysis remains exactly the same, and that was the analysis that Judge Cote examined below, but simply didn't apply in fact. The final point I wish to make is that even if one looks at intermediate level scrutiny, which the district court applied based upon the notion that this was a time, place, or manner restriction, one still has to satisfy the requirement of narrow tailoring. And as the Supreme Court in McClellan stated very clearly in defining what that narrow tailoring, the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interest, not simply that the chosen route is easier. If 10 people, 11 people, 15 people can protest independent of one another in exactly the same football field size public park, then certainly 25 people who are coordinating their message should have the same right under the First Amendment. Thank you, Your Honor. All right. Thank you. Let me just make sure that Judges Park and Nardini have no further questions. No, thank you. No, thanks. All right. So we'll now hear from Ms. Garman. Good morning, Your Honor. Ashley Garman on behalf of AFL-E. There is no basis to issue an injunction pending the resolution of Ms.   Gellar's motion is still in this case. Setting aside that her motion is now moot, and it is our position that the motion is moot because the regulation she challenges is no longer in effect. Ms. Gellar's... It's no longer in effect because the threshold number of people has changed. Is that why? Correct, Your Honor. Ms. Gellar's motion is still in effect. It's been replaced by a 10-person limit on all non-essential gatherings. That measure is no longer in effect. It's been replaced by a 10-person limit on non-essential gatherings. In any event, Ms. Gellar cannot show a likelihood of success in the merits... I'm sorry, this is Judge Nardini. But didn't she say from the get-go that she wanted to have 25 to 100 people? So, how does that really change? Does that really change the framework? As far as she's concerned? Yes, we do believe that there is a substantial change in the law because there is no longer a... Her argument, as she articulated to you this morning, is that individuals are able to protest but groups are not, and that argument is no longer correct because groups of up to 10 people practicing social distancing may protest. So, we do believe that the precise... The change in the law constitutes a substantial change in the law mooting her motion. There also was no record development below related to the particular... Related to the 10-person limit as opposed to a ban on all non-essential gatherings. And so, we do believe it would be a reasonable and certainly appropriate to deny Ms. Geller's motion and remand for further factual development if necessary. However, we believe that this record is sufficient to demonstrate that Ms. Geller would not be likely to succeed on her First Amendment claim under the law as it is now. The 10-person limitation on non-essential gatherings is a temporary emergency public health measure and is one part of a coordinated response with the state and largely led by the state, which is moving towards the gradual reopening of the city. The purpose of this measure is to curb the further spread of COVID-19, which Ms. Geller herself concedes is not just a significant government interest, but a compelling one. So, how do you square that with the second point made by Mr. O'Shaughnessy, which is that this executive order is not being enforced against groups that happen to have messages that align with those of the elected officials who are pronouncing them? A couple points, Your Honor. First, as Your Honor has pointed out, the separate public safety emergency that has been facing the city and really the country in the past couple of days is not something that was below the district court, and it was not anything, it was not, Ms. Geller never argued that prior to this morning, that her, that the gathering ban or the 10-person cap that replaced it was discriminating among different types of groups or different types of speech. Her content-based argument was that all groups were being treated differently than individuals. So, my first response, Your Honor, would be that there would need to be some development of a factual record, at a very minimum, in order to explore whether or not, you know, the ramifications of the city's response to the recent events. Can you think of any justification for barring Ms. Geller and her group from protesting? But not barring others from protesting, who might have much larger numbers? I'd be curious, does COVID not spread among certain groups, depending on their viewpoints? Your Honor, we simply don't know what the public health implications of the protests of today are. I mean, only, unfortunately, time will tell. However, the city is facing a separate public health emergency, and the city's response to that separate emergency involves different types of considerations and risks to be weighed. In addition to the public health considerations, considerations such as immediate threats of violence, an increased risk of physical injury to protesters and police, a strong likelihood of mass property destruction. There are simply other factors related to those other circumstances that do not make the gathering ban or the 10-person cap any less important or any less constitutionally valid. And again, there would need to be factual development of the city's response to recent events that postdated Ms. Geller's motion. The question on her motion is whether or not she can show a likelihood of success, a merit of her First Amendment claim. And as her counsel even admitted that the recent events are not important to that question, the particular question of whether her challenge to whether or not the 10-person cap has a legal justification is not relevant to the particular claim she was making. And the city certainly did not have an opportunity to develop any factual record regarding these recent events. So are you suggesting that we should remand this to the district court so that his claims can be evaluated in light of these new facts? Is that what your argument is? We believe that the factual record as it stands demonstrates that the 10-person limitation, which remains the law, is constitutional. However, it would certainly be appropriate for the court to remand this matter. But what we don't believe would be appropriate would be granting an injunction at this point in time because she has not demonstrated a likelihood of success on the merits. And again, we don't know the public health implications of recent events' counsel towards caution here. What would we ask the district court to develop and how would the factual record be developed if this were remanded? Can you describe that? Well, it depends. I mean, as your Honor pointed out, Ms. Geller's claim has always been, up until this morning, her argument has been that this matter is content-based because it discriminates between, it unreasonably treats individuals differently than groups. That is simply not the case as Chief Justice Roberts' recent concurrence in the South Bay United case reflects treating differently situated, non-comparable types of grouping, such as mass gatherings where people are together for long periods of time in close contact versus other activities, such as individuals exercising on open streets. There is a reason to treat them differently because of the way in which we know that the virus spreads and the nearly consensus between, in the medical and scientific community, that large gatherings pose a significant risk. That has always been the argument. Ms. Judge Park, when is the current executive order set to expire and does the city have a position on whether it's going to be renewed in light of recent events? The city, I'm not in a position to speak to whether or not it will be renewed. The orders are reassessed every five days. So when was it last re-upped? It was May 29th. Isn't that, isn't that what it said today? But I would note that, again, as we've shown in our papers, the history of the response to COVID-19 has really been led by the state. The city has been following the state's lead. And so an assessment of whether or not to extend the 10-person limitation would also involve consideration as to whether, as to what the state is going to do. And another reason... Well, if she wants to move the case, if it weren't renewed, that would do the job, wouldn't it? I'm sorry? If the order were not renewed today or tomorrow, whichever is up again, then that would moot this motion. If the order were not renewed, yes, because the city's executive orders need to be renewed every five days. The state executive orders, however, are in effect for up to 30 days. And so another consideration here that warrants caution is that the state is not a party here. The state has not had an opportunity to weigh in. And again, we believe that it's clear on this record that the 10-person limitation passes constitutional muster. However... I guess what I'm saying is just as a practical matter, the world has changed a lot in the last four days, five days. And if this is coming up through a rule today or tomorrow, that would make a difference in terms of how that comes out and how it affects Ms. Geller's claim, I would think. Yes, Your Honor. And that's precisely the point is that in a public health emergency and especially as we've seen with this particular public health emergency, the situation, the landscape changes very rapidly. And again, as Chief Justice Roberts pointed out in the South State concurrence, that particularly when on an application... Well, but I'm referring to the city's decision not to enforce its own order as opposed to the virus. The city's position is that the 10-person cap on gathering remains in effect. But that could change tomorrow. The city's response along with the state has been a coordinated, calibrated response based on changing facts and circumstances and the very fact that the gathering ban that was the subject of Ms. Geller's motion was loosened shortly after, between the time she filed her motion and the fact that restrictions are starting to be loosened simply demonstrates that there is forward progress based on the events that are changing and that are happening on the ground. But as Chief Justice Roberts even observed, while local officials are actively shaping their response to changing facts on the ground, that warrants particular deference to the decisions of elected officials enacting public health measures. While Ms. Geller believes that scrutiny applies in this case, for the reasons that we discussed in our brief, based on her content-based argument, it's clear that intermediate scrutiny applies because the 10-person limitation applies to all non- in control gatherings. All right, but the new argument, this is Judge Sullivan, the new argument made today in light of recent events is that it's not viewpoint neutral at all. And so that would be strict scrutiny, right? If it could be demonstrated that the city's response in recent days was content-based, we respectfully submit that there has not been any, there is nothing on this record indicating that, and at a very minimum, there would need to be a remand or a news lawsuit asserting a different type of claim. And those facts would have to be explored. However, there are reasons why that circumstance is different. It is simply a different public safety emergency with a different set of considerations and risks to be weighed. So docile people going into a synagogue or church, it's going to be enforced against them, but people who might get violent, they get to congregate because COVID won't affect them. Your Honor, that's not the city's position. Well, I hope it's not the position. That's obviously the case. That would be problematic. I mean, that's, but I think your point is that none of this has been explored. Judge Cote has never seen this argument. It's never been briefed and there's no record at all, right? Correct, and at a very minimum, the city is entitled to develop a record and it is, yes, that is correct. Okay. All right. I think we've gone well over five. Let me just ask Judge Modini and Judge Park if they have any questions. No, thank you. No. All right. No, thanks. Mr. Hiroshima, you had asked for, but I'll give you a minute just since Ms. Garman went over. Mr. Hiroshima, are you there? Yes, Ron. I'm sorry. I forgot to unmute my telephone. Okay. Thank you very much. I'll be very short. I'll be very short. Content-based restrictions, irrespective of whether they are viewpoint-based, which is simply a subclass of content-based, require strict scrutiny. That is the law. It was established in McCullen. It has been established by a law firm. We get all that. We get all that. Thank you. Anything else you want to say in light of the argument? Only that on remand question, we don't understand any new facts on the content-based analysis. And further, because this is a matter of prior restraint of free speech and assembly, by its virtue of that, it is irreparable harm. Every day that goes by that our clients' free speech and assembly rights are restricted, she suffers irreparable harm. And we would ask this court to respectfully issue the injunction. Thank you. Okay. All right. We will reserve decision. Thank you both very much.